UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――

JAY BRADSHAW,

                              Plaintiff,

                  v.                                              9:23-CV-0602
                                                                  (MAD/ML)
ANTHONY J. ANNUCCI, et al.,

                              Defendants.

―――――――――――――――――――――――

APPEARANCES:

JAY BRADSHAW
08-A-3654
Plaintiff, pro se
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953

HON. LETITIA JAMES                        DAVID C. WHITE, ESQ.
New York State Attorney General           Ass't Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224


MAE A. D'AGOSTINO
United States District Judge

## DECISION AND ORDER

**I.      INTRODUCTION**

       Pro se plaintiff Jay Bradshaw commenced this action by filing a complaint asserting

claims pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with an application to proceed

in forma pauperis ("IFP"), and a request for preliminary injunctive relief.  Dkt. No. 1

("Compl."); Dkt. No. 2 ("IFP Application"); Dkt. No. 4 ("First Preliminary Injunction Motion").[1]

By Decision and Order entered on July 24, 2023, this Court granted plaintiff's IFP Application in accordance with 28 U.S.C. § 1915(g), and following review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), dismissed several claims and defendants from this action, and found that several other claims survived sua sponte review and required a response.  Dkt. No. 5 ("July 2023 Order").  The Court also denied the First Preliminary Injunction Motion without prejudice.  *Id*. at 62-64.[2]

Presently before the Court are the following: (1) plaintiff's second motion for injunctive relief, Dkt. No. 23 ("Second Preliminary Injunction Motion"); (2) plaintiff's letter request for a stay of his deadline to submit an amended complaint based on his lack of access to his "legal papers", Dkt. No. 29 ("Stay Request"); (3) defendants' motion to revoke plaintiff's IFP status and opposition to the Second Preliminary Injunction Motion, Dkt. No. 62 ("Motion to Revoke");[3] and (4) plaintiff's third motion for injunctive relief, Dkt. No. 74 ("Third Preliminary Injunction Motion"), which defendants have opposed, Dkt. No. 75.

---

[1]  The complaint was also accompanied by an application seeking leave to commence a new civil action in this District as required by the Pre-Filing Order entered by the Honorable Glenn T. Suddaby on March 3, 2022.  *See In re: Bradshaw*, No. 9:21-PF-0002 (GTS), Dkt. No. 4 ("Pre-Filing Order").  By Decision and Order entered on May 18, 2023, the Honorable Brenda K. Sannes granted plaintiff's application to commence this action.  *Id*., Dkt. No. 10.

[2]  As of the date of the July 2023 Order, plaintiff had three other actions pending in this District.  *See Bradshaw v. Locke*, No. 19-CV-428 (N.D.N.Y. filed April 10, 2019) ("*Bradshaw v. Locke*"); *Bradshaw v. Marshal*, No. 21-CV-0826 (N.D.N.Y. filed July 21, 2021) ("*Bradshaw v. Marshal*"); *Bradshaw v. Annucci*, No. 21-CV-0901 (N.D.N.Y. filed Aug. 11, 2021) ("*Bradshaw v. Annucci I*").

[3]  Although docketed as a motion to dismiss, defendants effectively seek conditional dismissal of plaintiff's complaint unless and until he pays the filing fee for this action.  Plaintiff has opposed the Motion to Revoke and, in the same submission, replied to defendants' opposition to the Second Preliminary Injunction Motion.  *See* Dkt. No. 72.

## II.     MOTION TO REVOKE PLAINTIFF'S IFP STATUS

### A.     Overview of the Complaint

Generally speaking, and as relevant to defendants' Motion to Revoke, plaintiff's complaint alleges that at the time of filing, he had been continuously confined in the Residential Rehabilitation Unit ("RRU") for one year, and was scheduled to remain housed there for at least another year.  Compl., ¶¶ 221, 233, 248, 259-260, 303.  The complaint further alleges that plaintiff is confined in his cell for all but two hours each day, and had not received, throughout the year that he was confined in the RRU, an individual rehabilitation plan or private mental health therapy, despite a history of self-harm and ongoing anxiety and depression associated with his confinement status.  *Id*., ¶¶ 307-313, 332-340.  The complaint also identifies several incidents of plaintiff being assaulted by other inmates, alleges that he is likely to be harmed in the future if he continues to be placed in a double-bunk cell, and further alleges that he was informed three days before the complaint was filed that he would be placed in a double-bunk cell "as soon as possible."  *Id*., ¶¶ 96-179.

### B.     Initial Determination of Imminent Danger

Prior to commencing this action, plaintiff had filed more than twenty other civil actions in the district courts in the Second Circuit since 2008.  *See* July 2023 Order at 3-4.  In at least four of those actions, plaintiff acquired "strikes" as defined in 28 U.S.C. § 1915(g) ("Section 1915(g)").[4]  *Id*. at 4 n.5.  Notwithstanding this determination, plaintiff's IFP Application was

---

[4]   The actions in which plaintiff acquired strikes are as follows: (1) *Bradshaw v. McQueen*, No. 08-CV-5518, Dkt. No. 32 (S.D.N.Y. Feb. 11, 2010) (dismissing complaint for failure to state a claim upon which relief may be granted); (2) *Bradshaw v. Brown*, No. 13-CV-4308, Dkt. No. 52 (E.D.N.Y. May 18, 2017) (Mandate dismissing appeal of dismissal order on grounds that it lacked "an arguable basis either in law or in fact"); (3) *Bradshaw v. The City of New York*, No. 15-CV-2166, Dkt. No. 58 (E.D.N.Y. Aug. 22, 2017) (dismissing complaint for failure to state a claim upon which relief may be granted); (4) *Bradshaw v. The City of New York*, No. 15-CV-2166, Dkt. No. 62 (E.D.N.Y. Nov. 16. 2018) (Mandate dismissing appeal on grounds that it lacked "an arguable basis either in law or in fact").

granted based on the Court's determination that the allegations in the complaint were sufficient to "plausibly suggest that plaintiff [was] 'under imminent danger of serious physical injury' when he signed his complaint on April 17, 2023." *Id*. at 7 (citation omitted).

**C.** **Overview of Defendants' Motion and Plaintiff's Response**

Defendants argue that plaintiff's IFP status should be revoked because he did not face "imminent danger" when he submitted his complaint for filing. *See generally*, Dkt. No. 62-10. Defendants argue that the complaint fails to satisfy the "imminent danger" requirement because (1) the majority of the claims that survived initial review are based on incidents of past harm that occurred long before the filing date of the complaint, and (2) plaintiff's allegations of future harm based on the alleged events that occurred near the time of filing are speculative. *Id.* at 17-18.[5]

Defendants alternatively request a hearing to determine whether plaintiff was in danger of "imminent harm" pursuant to the applicable law set forth below. *Id.* at 21. Finally, defendants ask the Court to enjoin plaintiff from filing further motions in this case without court approval. *Id.* at 21-23.[6]

In his response to defendants' Motion to Revoke, plaintiff has submitted a sworn statement wherein he addresses the nature of his imminent danger allegations and details "relevant facts" that have occurred after the filing date of the complaint, which he believes support his request for injunctive relief. *See* Dkt. No. 72. Plaintiff has also submitted a memorandum of law and several exhibits in support of his opposition. Dkt. No. 72-1; Dkt. No.

---

[5] The page citations herein are those assigned by the Court's electronic filing system, CM/ECF.

[6] Defendants also implore the Court to revoke the special solicitude afforded to pro se litigants in evaluating the sufficiency of plaintiff's imminent danger allegations. Dkt. No. 62-10 at 20-21.

72-2.

**D.    Relevant Legal Standard**

Where a plaintiff seeks leave to proceed IFP, the Court must determine whether the

plaintiff has demonstrated sufficient economic need to proceed without prepaying, in full, the

Court's filing fee.  The Court must also determine whether the "three strikes" provision of

Section 1915(g) bars the plaintiff from proceeding IFP and without prepayment of the filing

fee.[7]  More specifically, Section 1915(g) provides as follows:

> In no event shall a prisoner bring a civil action or appeal a judgment
> in a civil action or proceeding under this section if the prisoner has,
> on 3 or more prior occasions, while incarcerated or detained in any
> facility, brought an action or appeal in a court of the United States
> that was dismissed on the grounds that it is frivolous, malicious, or
> fails to state a claim upon which relief may be granted, unless the
> prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

The "imminent danger" exception protects a prison inmate exposed to potential

"serious physical injury" from the consequences of his earlier mistakes in filing frivolous

litigation.  Congress enacted the imminent danger exception contained in the final phrase of §

1915(g) as a "safety valve" to prevent impending harms to prisoners otherwise barred from

proceeding in forma pauperis.  *Malik v. McGinnis*, 293 F.3d 559, 563 (2d Cir. 2002).  "[F]or a

prisoner to qualify for the imminent danger exception, the danger must be present when he

files his complaint–in other words, a three-strikes litigant is not excepted from the filing fee if

he alleges a danger that has dissipated by the time a complaint is filed."  *Pettus v.*

---

[7]  The manifest intent of Congress in enacting Section 1915(g) was to curb prison inmate abuses and to deter the filing of multiple, frivolous civil rights suits by prison inmates.  *Tafari v. Hues*, 473 F.3d 440, 443-44 (2d Cir. 2007).  The question of whether a prior dismissal is a "strike" is a matter of statutory interpretation and, as such, is a question for the court to determine as a matter of law.  *Tafari*, 473 F.3d at 442-43.

5

*Morgenthau*, 554 F.3d 293, 296 (2d Cir. 2009) (citation omitted); *see also Polanco v. Hopkins*, 510 F.3d 152 (2d Cir. 2007) (imminent danger claims must be evaluated at the time the complaint is filed, rather than at the time of the events alleged).  In addition, "§ 1915(g) allows a three-strikes litigant to proceed [in forma pauperis] only when there exists an adequate nexus between the claims he seeks to pursue and the imminent danger he alleges." *Pettus*, 554 F.3d at 296.  In deciding whether such a nexus exists, the Second Circuit instructs the courts to consider "(1) whether the imminent danger of serious physical injury that a three-strikes litigant alleges is *fairly traceable* to unlawful conduct asserted in the complaint, and (2) whether a favorable judicial outcome would *redress* that injury." *Id*. at 298-99.  Both requirements must be met in order for the three-strikes litigant to proceed in forma pauperis. *Id*.

Generally speaking, the allegations relevant to the imminent danger inquiry "are those in which [plaintiff] describes physical injury, threats of violence, and deprivation of medical treatment." *Chavis v. Chappius*, 618 F.3d 162, 165 (2d Cir. 2010).  Although the Second Circuit has cautioned against "an overly detailed inquiry into whether the allegations qualify for the exception," *id*. at 169-70 (*quoting Andrews v. Cervantes*, 493 F.3d 1047, 1055 (9th Cir. 2007)), when a defendant challenges a prisoner's claim of imminent danger, a district court may "reexamine" its provisional determination of imminent danger and "conduct a narrow evidentiary inquiry into the prisoner-litigant's fear of imminent danger" at the time of filing. *Shepherd v. Annucci*, 921 F.3d 89, 94-95 (2d Cir. 2019).  If the evidentiary submissions show the plaintiff's explanation for why he was in imminent danger to be "ridiculous," "conclusory," or "without foundation[,]" the district court may revoke the plaintiff's previously granted IFP status. *Id*. at 95, 97; *see also Chavis*, 618 F.3d at 170 ("A court may

6

find that a complaint does not satisfy the 'imminent danger' exception if the complainant's 'claims of imminent danger are conclusory or ridiculous.'") (quoting *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003)); *Nelson v. Nesmith*, No. 9:06-CV-1177 (TJM/DEP), 2008 WL 3836387, at *5 (N.D.N.Y. Aug. 13, 2008) ("The imminent danger claimed by the inmate . . . must be real, and not merely speculative or hypothetical."); *accord, Welch v. Selsky*, No. 9:06-CV-0812 (LEK/DEP), 2008 WL 238553, at *5 (N.D.N.Y. Jan 28, 2008); *Gamble v. Maynard*, No. 9:06-CV-1543 (DNH/DEP), 2008 WL 150364, at *4 (N.D.N.Y. Jan. 14, 2008).

### E.    Analysis

Liberally construed, the complaint alleges that plaintiff faced imminent danger of serious physical injury at the time he commenced this action based on (1) the nature of his restrictive confinement on April 17, 2023 -- scheduled to continue for another year -- and the potential deterioration on his mental health related to such confinement and a lack of access to mental health treatment, (2) plaintiff's past history of being assaulted by other inmates while in a double-bunk cell, (3) plaintiff's potential for future harm if he continues to be placed in a double-bunk cell with inmates who may wish to harm him, and (4) a likelihood of his imminent placement in a double-bunk cell with an inmate who did not pass a tuberculosis screening.  *See* Compl. at ¶¶ 96-179, 221, 233, 248, 259-260, 303. 307-313, 332-340.

Upon review, the Court finds that the aforementioned allegations of imminent are sufficiently specific to place defendants on notice as to the risk of harm that plaintiff faced at the time of filing.  Indeed, as plaintiff notes in his opposition to the Motion to Revoke, the complaint identifies dates that plaintiff was assaulted by other inmates while in a double-bunk cell, including on March 12, 2023, and also specifically alleges that (1) after plaintiff was assaulted by a gang member on March 12, 2023, he was relocated to a cell with another

7

"gang member" because defendant Bishop "failed to do a reassessment[,]" (2) defendants DeCosse and Bishop denied his request for protective custody, and (3) on April 14, 2023, defendants Jubert and Gravlin recommended that he be placed in a cell with another inmate who had not been cleared for tuberculosis, and defendant Jubert told plaintiff that the double-celling would happen "as soon as possible."  *See* Compl. at ¶¶ 171-79; Dkt. No. 72 at 2-3.[8]

In addition, defendants have not introduced any evidence to rebut either the aforementioned allegations, or plaintiff's allegations of prior self-harm and a lack of access to mental health treatment around the time that the complaint was filed.  In fact, defendants did not introduce any record evidence to refute plaintiff's allegations of imminent danger.

Furthermore, the Second Circuit has expressly held that "a prisoner with three strikes who adequately alleges imminent danger can, in the same suit, proceed IFP on other claims that lack a nexus to imminent danger."  *Chavis v. Chappius*, 618 F.3d 162, 171 (2d Cir. 2010) ("Nothing in the text of § 1915 provides any justification for dividing an action into individual claims and requiring a filing fee for those that do not relate to imminent danger.").  Thus, there is no merit to defendants' argument that plaintiff's IFP status should be revoked because several claims in the complaint relate to alleged events that occurred in 2021 and 2022.

In light of the foregoing, defendants' motion to revoke plaintiff's IFP status is denied. Based on the lack of record evidence challenging plaintiff's imminent danger allegations, the Court also declines to hold a hearing in further consideration of this matter.

## III.    PRELIMINARY INJUNCTION MOTIONS

---

[8]  Plaintiff also states in his opposition that this inmate threatened to harm him and defendant Jubert was aware of this threat.  *See* Dkt. No. 72, ¶¶ 15-16.

### A.    Relevant Legal Standard

Preliminary injunctive relief "'is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). "In general, district courts may grant a preliminary injunction where a plaintiff demonstrates 'irreparable harm' and meets one of two related standards: 'either (a) a likelihood  of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party.'"  *Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d  Cir. 2014) (quoting *Lynch v. City of N.Y.*, 589 F.3d 94, 98 (2d Cir. 2009) (internal quotation marks omitted)).  However, when the moving party seeks a "mandatory injunction that alters the status quo by commanding a positive act," the burden is even higher.  *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011) (citing *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 n.4 (2d Cir. 2010) (internal quotation marks omitted)).  A mandatory preliminary injunction "should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Cacchillo*, 638 F.3d at 406 (citing *Citigroup Global Mkts.*, 598 F.3d at 35 n.4) (internal quotation marks omitted)); *see also Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995) (a plaintiff seeking a mandatory injunction must make a "clear" or "substantial" showing of a likelihood of success on the merits of his claim).

The same standards used to review a request for a preliminary injunction govern

consideration of an application for a temporary restraining order. *Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992); *Perri v. Bloomberg*, No. 06-CV-0403, 2008 WL 2944642, at *2 (E.D.N.Y. Jul. 31, 2008). The district court has wide discretion in determining whether to grant preliminary injunctive relief. *Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 511 (2d Cir. 2005). "In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 846-47 (1994)) (other citations omitted).

"'A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction.'" *Bisnews AFE (Thailand) Ltd. v. Aspen Research Group Ltd.*, 437 Fed. App'x 57, 58 (2d Cir. 2011) (summary order) (quoting *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009)). Generally an alleged violation of a constitutional right creates a presumption of irreparable harm. *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996). However, speculative, remote or future injury is not the province of injunctive relief. *Los Angeles v. Lyons*, 461 U.S. 95, 111-12 (1983). Rather, a plaintiff seeking to satisfy the irreparable harm requirement must demonstrate that "absent a preliminary injunction [he or she] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Bisnews AFE (Thailand)*, 437 Fed. App'x at 58 (quoting *Faiveley*, 559 F.3d at 118); *Garcia v. Arevalo*, No. 93-CV-8147, 1994 WL 383238, at *2 (S.D.N.Y. June 27, 1994) ("It is well settled that an allegation of the mere possibility of irreparable harm is insufficient to justify the drastic remedy of preliminary injunction. . . . A

party who seeks the extraordinary remedy of a preliminary injunction must show the alleged

irreparable harm to be imminent, not remote or speculative, and the alleged injury to

constitute one that is incapable of being fully remedied by monetary damages." (citations

omitted)).

> ### B.   Procedural History

In his First Preliminary Injunction Motion, plaintiff sought an order enjoining defendants

Annucci, Uhler, Bishop, and Dumas from (1) assigning officials "involved in assaulting plaintiff

from assuming a post or supervising an area where plaintiff is located," (2) "assigning plaintiff

to double-bunk cells or having [him] remain in a double-cell [for] more than 60 days unless he

volunteer[s]," (3) "continuing plaintiff's confinement in the RRU[,]" and (4) "denying [him]

medical care[.]"  *See* First Preliminary Injunction Motion at 1.

The Court denied the motion on the grounds that plaintiff was transferred to Great

Meadow Correctional Facility after he filed it, and there was no "credible evidence" before the

Court that he was "likely to continue suffering, at his new facility, the same alleged harm that

forms the basis of his . . . motion[.]"  July 2023 Order at 64.

On October 5, 2023, the Court received a notice of change of address and renewed

request for injunctive relief from plaintiff based on his transfer back to Upstate Correctional

Facility.  Dkt. No. 17.  On October 20, 2023, the Court issued a Text Order directing counsel

for the defendants to file a response within thirty days.  Dkt. No. 22.  Thereafter, plaintiff filed

the Second Preliminary Injunction Motion and counsel filed a letter request for an extension

of time to respond to the complaint and pending requests for injunctive relief.  Dkt. No. 23

("Second Preliminary Injunction Motion"); Dkt. No. 24 ("Extension Request").

By Text Order entered on October 27, 2023, the Court denied as moot plaintiff's

request for injunctive relief filed on October 5, 2023, and extended counsel's deadline to respond to the complaint and Second Preliminary Injunction Motion to December 15, 2023. Dkt. No. 25.  Prior to the expiration of counsel's response deadline, plaintiff filed two additional letter requests, which were addressed and denied in a Text Order entered on December 5, 2023.  Dkt. No. 26; Dkt. No. 27; Dkt. No. 28 ("December 2023 Text Order"). The December 2023 Text Order also advised plaintiff that he could "includ[e], in any reply submission, sworn statements and supporting record evidence detailing any incidents of harm that have occurred since October 20, 2023, which are relevant to his motion[,]" and that "[n]o other submissions" related to his request for injunctive relief would be considered.

The day after the issuance of the December 2023 Text Order, the Court received plaintiff's Stay Request.  Thereafter, plaintiff replied to defendants' opposition to the Second Preliminary Injunction Motion.  *See* Dkt. No. 72.  Roughly two months later, he filed the Third Preliminary Injunction Motion.

### C.    Second Preliminary Injunction Motion

#### 1.  Overview of the Motion

The Second Preliminary Injunction Motion seeks an order enjoining defendants Annucci and Uhler, and their successors, from (1) "assigning any named defendant who [has] assaulted plaintiff or failed to intervene from assuming a post or supervising an area where plaintiff is located[,]" (2) "considering and assigning plaintiff to a double-cell for his safety" or "transfer[ring] plaintiff to a facility where he [will] not be double bunked[,]" and (3) "transfer[ring] plaintiff to another facility . . . to prevent further retaliation."  *See* Second Preliminary Injunction Motion at 1.

Plaintiff's requested relief is based on the following incidents, detailed in his two

declarations submitted in support of his motion: (1) on September 28, 2023, plaintiff was transferred back to Upstate Correctional Facility and was escorted to his cell by defendant Menard, who "grabb[ed]" plaintiff's waist restraint during the escort, "grabbed [him] by the back of [his] shirt" when he entered "the cage," then "threatened to slam [him] to the ground" and did so;[9] (2) "[a]bout an hour later, a known Blood was brought to the cell" and "immediately attacked [plaintiff,]" which resulted in his relocation to another cell;[10] (3) the next day, plaintiff was "attacked by [another] Blood gang member" and then "relocated to another cell with a third Blood gang member"; (4) on October 3, 2023, the "third Blood gang member" "groped" plaintiff and "attacked" him because he "continued to resist" this inmate's sexual advances; (5) later that day, plaintiff was relocated to a cell with "a Crip gang member" and "attacked . . . with a weapon" and "stabbed three or four time[s]" within "minutes" of his arrival; (6) plaintiff was then "relocated to a cell with a fourth Blood" and again "attacked" "[w]ithin minutes"; (7) on October 3, 2023, a non-party corrections official "twisted and bent the handcuffs" on plaintiff's wrists during an escort, and this official and defendant Trombley also worked together to remove the handcuffs from plaintiff's hands in a painful manner; (8) on October 11, 2023, a different non-party corrections official "squeezed the handcuffs around plaintiff[']s wrist and the waist restraint around [his] ribs" and also attempted to "trip plaintiff" for no reason;[11] (8) on November 10, 2023, a third non-party corrections official

---

[9]  Plaintiff states in his reply papers that he suffered injuries from this incident that included "an abrasion to [the] right eye [and] right and left wrist."  Dkt. No. 72, ¶¶ 24-25.

[10]  Plaintiff states in his reply declaration that a non-party corrections sergeant was responsible for this cell assignment and plaintiff's cell relocation following this assignment.  *See* Dkt. No. 72, ¶¶ 49-51.

[11]  Plaintiff's initial declaration in support of the Second Preliminary Injunction Motion is dated October 23, 2023.  *See* Dkt. No. 23 at 3.  However, this declaration does not mention any events involving corrections officials subjecting him to unwanted force at any point between October 3 and October 23, 2023.

"twisted and bent" the handcuffs on plaintiff's wrists while "appl[ying] weight" and "pinn[ing] plaintiff to the wall"; (9) that same day, plaintiff was "attack[ed]" by his cellmate; (10) on November 12, 2023, defendant Martin "repeatedly and intentionally collided into plaintiff during [an] escort, then pushed plaintiff in the back as [his] cell door was closing"; and (11) on December 6, 2023, a fourth non-party corrections official "pulled and grabbed plaintiff" to remove him from his cell and "pushed [him] several time[s] in the back without provocation[.]" Dkt. No. 23 at 2-3; Dkt. No. 72 at 4-5.[12]

In opposition to the Second Preliminary Injunction Motion, defendants have adduced record evidence, including sworn statements from several named defendants, denying that plaintiff was wrongly placed in a double-cell at any point, and further denying improperly subjecting plaintiff to excessive force.  *See* Dkt. No. 62-1; Dkt. No. 62-2; Dkt. No. 62-3; Dkt. No. 62-5; Dkt. No. 62-6; Dkt. No. 62-8; Dkt. No. 62-9.  Defendants also argue that the Second Preliminary Injunction Motion should be denied because (1) plaintiff has failed to offer evidence showing that any of the named defendants were involved in his placement in double-bunk cells despite knowing that he faced a risk of harm, (2) plaintiff has failed to establish that his housing assignment places him in more danger than ordinarily exists in a prison setting, (3) the alleged past instances of excessive force are not enough to establish a future likelihood of irreparable harm, (4) plaintiff has failed to establish a likelihood of success on the merits of his underlying claims, and (5) it is not in the public's interest for incarcerated individuals to select where and how they are housed.  Dkt. No. 62-10 at 12-15.

## 2. Analysis

---

[12]  Plaintiff also submitted several exhibits with his reply papers, comprised mostly of grievances and medical records.  *See* Dkt. No. 72-1 at 17-43; Dkt. No. 72-2.

As noted, the Second Preliminary Injunction Motion seeks three separate forms of mandatory injunctive relief based on use-of-force and harassment issues involving staff, and plaintiff's involvement in altercations with cellmates.

Insofar as plaintiff seeks a transfer to another correctional facility based on this alleged wrongdoing, as this Court has expressly advised him in the past, it is the New York State Department of Corrections and Community Supervision ("DOCCS"), and not this Court, that determines where plaintiff will be housed during his period of incarceration.  *See Meachum*, 427 U.S. at 229; *Olim v. Wakinekona*, 461 U.S. 238, 248-49 (1983) (stating that inmates have no right to be confined in a particular state or particular prison within a given state); *Montayne v. Haymes*, 427 U.S. 236, 243 (1976) (holding that New York state prisoners have no right to incarceration at a particular prison facility).  It is well-established that DOCCS has "broad leeway in deciding where to house the inmates under its protective care."  *McFadden v. Solfaro*, Nos. 95-CV-1148, 95-CV-3790, 1998 WL 199923, at *10 (S.D.N.Y. Apr. 23, 1998). Furthermore, according to DOCCS Directive #4948, when a transfer is sought for safety reasons, the Office of Classification and Movement is responsible for determining "the appropriate alternative facility placement for [an] incarcerated individual, if any, and issu[ance of any] Transfer Order."  *See* Directive #4948, Section V(A)(3); https://doccs.ny.gov/system/files/documents/2024/01/4948-public.pdf (last visited Apr. 23, 2024).  Neither DOCCS nor any officials from the Office of Classification and Movement are defendants in this case, and the law is well-settled that, with limited exception, injunctive relief cannot be awarded against non-parties.  *See* Fed. R. Civ. P. 65(d)(2); *Doctor's Associates, Inc. v. Reinert & Duree, P.C.*, 191 F.3d 297, 302-03 (2d Cir. 1999); *United States v. Regan*, 858 F.2d 115, 120 (2d Cir. 1988); *see also In re Rationis Enterprises, Inc. of Panama*, 261

F.3d 264, 270 (2d Cir. 2001) ("A court may not grant a final, or even an interlocutory, injunction over a party over whom it does not have personal jurisdiction.").

Insofar as plaintiff seeks an order from this Court prohibiting the Superintendent of Upstate Correctional Facility from allowing certain officials to have contact with plaintiff based on past use-of-force and harassment incidents, with the exception of defendant Menard, none of the officials involved in this alleged wrongdoing are parties to this action, and plaintiff's underlying claims in this case bear no relationship to the alleged isolated incidents of harm involving these officials.  Thus, this alleged wrongdoing cannot provide a basis for a preliminary injunction in this lawsuit.  *See Stewart v. U.S. I.N.S.*, 762 F.2d 193, 198-99 (2d Cir. 1985) ("Only after an action has been commenced can preliminary injunctive relief be obtained. . . . Herein, Stewart filed a complaint in the district court in October, 1983, alleging discrimination in employment based on conduct of the type asserted in his 1980 EEOC claims, and thereby commenced an action pertaining to the then alleged discriminatory conduct. His July, 1984 motion for preliminary injunctive relief, claiming discrimination and retaliation based on his suspension without pay in May, 1984, presents issues which are entirely different from those which were alleged in his original complaint. Since Stewart neither filed a separate complaint in the district court relating to his suspension without pay and based upon his MSPB action, . . . nor sought to avail himself of the liberal rules which would have allowed for the amendment of his original October, 1983 complaint, we hold that no jurisdictional basis existed upon which the district court herein could have issued its preliminary injunctive relief."); *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) ("It is self-evident that Devose's motion for temporary relief has nothing to do with preserving the district court's decision-making power over the merits of Devose's [Section] 1983 lawsuit. To

the contrary, Devose's motion is based on new assertions of mistreatment that are entirely different from the claim raised and the relief requested in his inadequate medical treatment lawsuit. Although these new assertions might support additional claims against the same prison officials, they cannot provide the basis for a preliminary injunction in this lawsuit."); *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997) ("[A] preliminary injunction may never issue to prevent an injury or harm which not even the moving party contends was caused by the wrong claimed in the underlying action."); *Colvin v. Caruso*, 605 F.3d 282, 300 (6th Cir.2010) (the plaintiff "had no grounds to seek an injunction pertaining to allegedly impermissible conduct not mentioned in his original complaint); *Davidson v. Scully*, 914 F. Supp. 1011, 1016 (S.D.N.Y. 1996) ("Plaintiff complains that his furnishings and supplies are inadequate and this interferes with his ability to prepare his cases. Although argued as a motion for a preliminary injunction, plaintiff in fact has moved for an order unrelated to the merits of his underlying claims, because there is no actual controversy between the parties before the Court regarding the adequacy of plaintiff's furnishings and supplies."); *Santiago Cruz v. Doe #1*, No. 9:21-CV-0806 (TJM/ML), 2021 WL 5629097, at *3 (N.D.N.Y. Dec. 1, 2021) (denying request for injunctive relief where the plaintiff failed to make a clear showing that the allegations that form the basis of his motion are "related to the underlying action" (collecting cases)); *Candelaria v. Baker,* No. 00-CV-0912, 2006 WL 618576, at *3 (W.D.N.Y. Mar. 10, 2006) ("To prevail on a motion for preliminary injunctive relief, the moving party must establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint." (internal quotation marks and citations omitted)); *see also Fabrizio v. Oliver*, No. 9:18-CV-0339 (GTS/DEP), 2018 WL 11243392, at *3 (N.D.N.Y. July 20, 2018) (finding allegations of wrongdoing by named

defendants surrounding pat frisks and the refusal to return personal property "wholly unrelated" to claims of excessive force based on an isolated event that occurred roughly three months earlier, and denying request for injunctive relief based on unrelated events).

Moreover, the alleged staff misconduct consists of defendant Menard allegedly pushing plaintiff on September 28, 2023, and other corrections officials "colliding" with him during escorts and applying pressure to his handcuffs and restraints. Dkt. No. 23 at 2-3; Dkt. No. 72 at 4-5. As this Court recently noted in *Bradshaw v. Annucci I* -- wherein plaintiff sought the exact same injunctive relief based on much of this same conduct -- "plaintiff's speculation regarding his risk of future harm . . . based on what amounts to, at most, unsubstantiated allegations of harassment, falls far short of a substantial showing that certain, imminent, and irreparable harm will occur in the absence of the injunctive relief he seeks." *See Bradshaw v. Annucci I*, Dkt. No. 176 at 6-7 (collecting cases).

Finally, insofar as plaintiff seeks injunctive relief prohibiting his placement in a double-bunk cell, the Court finds it significant that plaintiff's last submission seeking injunctive relief related to his housing is dated January 8, 2023, yet he does not indicate in that filing where he has been housed since December 6, 2023, or the outcome or status of any investigation related to grievances challenging a double-bunk assignment. *See generally*, Dkt. No. 72.[13]

In any event, defendants have introduced evidence showing that on October 20, 2023, defendant Gravlin performed a risk assessment in accordance with the applicable DOCCS

---

[13] It appears from documents attached to the Third Preliminary Injunction Motion that plaintiff was sent to Green Haven Correctional Facility on December 11, 2023, returned to Upstate Correctional Facility on December 21, 2023, was sent back to Green Haven Correctional Facility on January 16, 2024, and returned to Upstate Correctional Facility on February 8, 2024. *See* Dkt. No. 74-3 at 22. Plaintiff's reply to his Second Preliminary Injunction Motion does not indicate where he was housed at Upstate Correctional Facility between December 6 and December 11, 2023, or between December 21, 2023 and the date those papers were filed. In addition, none of the grievances attached to the Third Preliminary Injunction Motion complain about plaintiff's housing assignment since his return to Upstate Correctional Facility on February 8, 2024.

Directive in approving plaintiff for double-cell placement.  *See* Dkt. No. 62-3, ¶ 11; Dkt. No. 62-4.  Plaintiff argues that the risk assessment was flawed, and that a proper assessment would have led to a conclusion that he is not a candidate for double-celling because he has been "labeled a snitch" and is "victim prone" based on a "longstanding history of being assaulted by gang members **and other prisoners**."  Dkt. No. 72, ¶ 99 (emphasis added).  In other words, according to plaintiff, it does not matter who he shares a cell with because any inmate poses a risk of harm to him, and an injunction prohibiting officials at Upstate Correctional Facility from double-celling plaintiff with anyone is the only way to remedy this ongoing risk.

The Court is unable to accept this sweeping proposition as true for at least three reasons.  First, plaintiff sued several officials from Upstate Correctional Facility in *Bradshaw v. Locke* based on allegations that these officials failed to protect him from a serious risk of harm by placing him in a cell with gang members between June 28, 2018 and March 14, 2019.  *See Bradshaw v. Locke*, Dkt. No. 171 at 6-14 (reciting factual background of the claims in the case following the close of discovery).  Plaintiff's Eighth Amendment claims against one of the officials in that case -- the Deputy Superintendent of Security -- were based on allegations that this official was aware, before approving plaintiff for a cell assignment with two different inmates, that he was victim prone, and that the inmates approved for double-celling with him were gang members.  *Bradshaw v. Locke*, Dkt. No. 171 at 4, 10-13, 29-33, 38-39; *Bradshaw v. Locke*, Dkt. No. 126, ¶¶ 38, 47.  On January 25, 2024, a jury returned a verdict in favor of the defendants on all of plaintiff's claims, including the aforementioned Eighth Amendment claims.  *Bradshaw v. Locke*, Dkt. No. 232.

Second, plaintiff introduced evidence in *Bradshaw v Locke* that on two separate

occasions he was housed at Upstate Correctional Facility with inmates who did not present a risk of harm to him. *See Bradshaw v Locke,* Dkt. No. 148 at 15, ¶¶ 11-16; Dkt. No. 140-10 at 22-23, 74-77; Dkt. No. 126, ¶¶ 28-30. Plaintiff also testified in that case that when he first arrived at Upstate Correctional Facility, he informed staff that he believed he faced a risk of harm if he was double-celled with "a prisoner who is a gang member, particularly Bloods[.]" *Bradshaw v Locke,* 140-10 at 31-32. In other words, the record in *Bradshaw v Locke* presented by plaintiff did not even categorize his perceived risk of harm to be as broad as he is currently categorizing it.

Third, according to DOCCS Directive #4040 § 701.3 (i), once an inmate submits a grievance regarding a complaint of sexual abuse, as plaintiff apparently did in this case in November, 2023,[14] the Inmate Grievance Process Supervisor must report the complaint to the facility Watch Commander "for further handling in accordance with Departmental policies." DOCCS Directive #4027A(I). This Directive also requires that all sexual abuse allegations be investigated. *See* DOCCS Directive #4027A(V)(I).[15]

In addition, according to DOCCS Directive #4948, following an assessment conducted pursuant to Directive #4027A, an inmate who is deemed to be "at high risk for sexual victimization" may be placed in involuntary protective custody if he does not accept admission into protective custody status. *See* DOCCS Directive #4948(III)(C). DOCCS Directive #4948

---

[14]  *See* Dkt. No. 72-1 at 41-42.

[15]  This Directive further indicates that the Deputy Superintendent of Security for each facility must maintain "a bound and numbered 'Report of Sexual Victimization Logbook'" that lists "each report of sexual victimization or related conduct . . . that occurs." DOCCS Directive #4027A(V)(D)(1). Each logbook entry must include various information obtained during the investigation into the sexual abuse allegations, and on a monthly basis, each correctional facility is required to submit "a chronological listing of each report of sexual victimization" for review by the Superintendent, who must then forward the monthly report to the Associate Commissioner for the Prison Rape Elimination Act, with a copy to the Deputy Commissioner for Correctional Facilities. DOCCS Directive #4027A(V)(D)(3), (E).

also allows an inmate to request voluntary protective custody if he believes he is in danger --
as plaintiff claims he did in October and November, 2023 -- and requires any such request to
be "investigate[d]" by an assigned employee, who must then provide a report to the
Superintendent or his designee for a final determination.  *See* Section IV.[16]

In light of the aforementioned Directives, any request for protective custody or
grievance related to sexual abuse should have been investigated.[17]  However, none of the
documents attached to plaintiff's motion papers include (1) a completed protective custody
request form, (2) a grievance based on the refusal of any corrections officials to complete the
request form and investigate the request, (3) a grievance based on the denial of a protective
custody request, or (4) a response to a grievance related to a protective custody request or
complaint of sexual abuse.[18]  Plaintiff also does not offer any explanation as to the reason(s)
why his protective custody requests were denied; he simply says they were denied.

In the event plaintiff's protective custody requests and/or sexual abuse allegations
were investigated and a determination was made that plaintiff's allegations were unfounded
and/or that he may still be housed with other inmates, the factual basis for such a
determination would seemingly be entitled to some weight.  *See Meachum v. Fano*, 427 U.S.
215, 229 (1976) (noting that "federal courts do not sit to supervise state prisons, the

---

[16]  The employee assigned to investigate the request must complete Form #2183, entitled "Voluntary Protective Custody Status Consideration Form[.]"  *Id*.

[17]  Plaintiff states in his reply declaration that (1) he requested protective custody after he was allegedly assaulted by other inmates on September 28 and 29, 2023, and his request was denied, (2) he requested protective custody again at the end of October, 2023, and that request was denied, and (3) a non-party corrections sergeant "appeared" at his cell on October 24, 2023, to "mock and harass" him for submitting a request for protection to the Office of Special Investigation.  Dkt. No. 72, ¶¶ 50, 53, 55-57, 68-69.

[18]  Although it appears plaintiff filed a grievance in November, 2023, wherein he complained about being sexually abused, *see* Dkt. No. 72-1 at 41-42, plaintiff has not indicated whether an investigation was conducted related to his abuse allegations, or what the result was, if anything.

administration of which is [of] acute interest to the States").  In the event no investigation was undertaken, it is unclear why plaintiff would not have grieved the lack of an investigation.

Simply put, plaintiff has failed to establish that housing him in a double-cell with any other inmate subjects him to a serious risk of physical harm, which was (and is) known to one or more of the named defendants on (and after) September 28, 2023.  Thus, plaintiff has failed to make a clear showing that he is entitled to an injunction prohibiting officials at Upstate Correctional Facility from placing him in a double-cell with anyone.

The Court will add only that there is no evidence in the current record that plaintiff is likely to be housed with any of the inmates who allegedly attacked him following his return to Upstate Correctional Facility on September 28, 2023.  In addition, insofar as plaintiff generically contends that inmates who are gang members present a risk of harm to him, it is unclear why plaintiff believes that this risk of harm only exists at Upstate Correctional Facility, in a shared cell or during programming.[19]

For these reasons, plaintiff's Second Preliminary Injunction Motion is denied.

### D.    Third Preliminary Injunction Motion

#### 1.  Overview of the Motion

The Third Preliminary Injunction Motion seeks an order directing defendants Annucci, Uhler, Stickney, Gravlin, Veneske, and their successors to (1) provide plaintiff with an Inmate Rehabilitation Plan ("IRP") with a projected date of completion and discharge from the Residential Rehabilitation Unit ("RRU") by his next 60 day periodic review, or otherwise discharge him from the RRU by his next periodic review, (2) specify in writing what is required

---

[19]  Plaintiff has also not offered any factual support for his conclusory statements that five out of the six inmates who allegedly attacked him between September 28 and November 11, 2023, were gang members. Indeed, it is entirely unclear how plaintiff would have this information.

for plaintiff to be discharged by his next periodic review, (3) offer at least seven hours of out of cell programming, including one hour of congregate recreation, (4) provide him weekly phone calls and daily tablet services and not deprive him such as a means of retaliation, and (5) designate him protective custody status to protect him from known and unknown enemies, and/or transfer him to a facility where he may be safely and appropriately programmed per DOCCS policy. *See* Dkt. No. 74.

According to plaintiff, he is entitled to an IRP, which is necessary for him to obtain an early discharge from the RRU, and is also entitled to certain other privileges pursuant to New York Correction Law § 137. *See generally*, Dkt. No. 74-1. Plaintiff also states that he faces a risk of harm if he participates in programming at Upstate Correctional Facility, which is why he has refused to participate in programming (and wishes to be transferred to another facility). *Id*.

Defendants have opposed plaintiff's motion on the grounds that (1) the Court lacks personal jurisdiction to enjoin the actions of unidentified, non-party individuals, (2) an "obey the law" injunction is not legally available, (3) plaintiff has failed to establish that he will suffer irreparable harm if the requested relief is not granted, and (4) plaintiff has not shown that the allegations in his motion are related to the underlying claims that remain in this case. *See* Dkt. No. 75. The Court agrees.

As an initial matter, generally speaking, the claims that remain in this action relate to alleged use-of-force incidents involving certain corrections officials, the failure of certain officials to protect plaintiff from a risk of harm presented by other inmates, the propriety of disciplinary sanctions imposed against plaintiff, and the conditions of his restrictive confinement. *See* July 2023 Order. While Eighth Amendment claims remain in this action

23

related to plaintiff's confinement in the RRU, there is no claim in this action related to officials engaging in alleged misconduct that prevented plaintiff from participating in programming.  In addition, the alleged wrongdoing identified in plaintiff's motion papers began more than six months after the complaint in this action was filed, and leading up to these events, plaintiff was not incarcerated at Upstate Correctional Facility.  In other words, the basis for the injunctive relief plaintiff seeks bears no relationship to the underlying claims that remain in this action.[20]

Moreover, plaintiff has introduced evidence showing that an IRP was developed for him sometime after October 12, 2023.  *See* Dkt. No. 74-3 at 22.  It also appears that the privileges plaintiff seeks, along with his opportunity for early discharge from the RRU, is directly tied to his participation in programming.  *Id*. at 18, 22, 27.  Plaintiff, however, has failed to credibly explain why he believes he is likely to be harmed if he participates in programming at Upstate Correctional Facility, but not harmed during congregate recreation, or during his participation in programming at another facility, which are among the types of relief he seeks.  Simply put, plaintiff's belief that he faces a risk of harm if he participates in programming at Upstate Correctional Facility appears to be entirely speculative, and, as set forth above, a party cannot rely on speculation to secure injunctive relief.  *See Lyons*, 461 U.S. at 111-12.

For these reasons, the Third Preliminary Injunction Motion is denied.

---

[20]  Insofar as plaintiff contends that DOCCS officials have violated New York Correction Law § 137 by not affording him a "meaningful periodic review" of his RRU confinement, a violation of state law is not, by itself, a basis for injunctive relief in this Section 1983 action.  *See Handberry v. Thompson*, 446 F.3d 335, 346 (2d Cir. 2006) (holding that 18 U.S.C. § 3626 "clearly prohibits a federal court from issuing preventive relief based entirely upon state-law claims" and therefore a district court is "not permitted to order prospective relief to remedy an asserted violation of state law only").

## IV.    FUTURE FILINGS

Defendants ask the Court to enjoin plaintiff from filing further motions in this case without court approval.  *See* Dkt. No. 62-10 at 21-23.  Plaintiff opposes the request on the grounds that (1) he has not filed any pleadings in the Northern District of New York that have been dismissed as without merit or frivolous, or for the purpose of harassment, (2) he "now is aware of the proper filing procedures as to motion practice[" and (3) "the Court's instruction and warnings relating to any improper filing is sufficient" to prevent future improper filings. *See* Dkt. No. 72-1 at 14.

This Court has devoted significant resources to plaintiff's filings over the years, which include dozens of non-meritorious requests for injunctive relief.  Before plaintiff initiated this action, he had been repeatedly cautioned against filing overlapping requests for injunctive relief in more than one of his pending cases, and was well-aware that requests for injunctive relief must bear some relationship to the underlying claims in his pleading.  Nonetheless, at the same time that he submitted the Second Preliminary Injunction Motion, he filed a motion for injunctive relief in *Bradshaw v. Annucci I*, based on the exact same alleged wrongdoing,[21] and thereafter filed the Third Preliminary Injunction Motion based on alleged wrongdoing that bears no relationship to the remaining claims in this case.  Plaintiff has also been told numerous times that he cannot use his lawsuits as an end-run around the administrative process within DOCCS, yet he continues to do so.

In short, the Court has no reason to believe that plaintiff will discontinue his habit of vexatious and unduly burdensome filings in the absence of some sort of restriction. Accordingly, and as this Court recently ruled in denying plaintiff's most recent request for

---

[21]    *See Bradshaw v. Annucci I*, Dkt. No. 176.

injunctive relief in *Bradshaw v. Annucci I*, plaintiff is advised that in the event he files another unsubstantiated motion for injunctive relief that is denied for one or more reasons previously addressed by this Court, defendants may request costs and expenses associated with opposing the motion, and renew their current request for a filing restriction.  *See Shepherd v. Annucci*, 921 F.3d 89, 97 (2d Cir. 2019) (recognizing the district court's "inherent power to supervise and control its own proceedings and to sanction counsel or a litigant for bad-faith conduct" following "adequate notice and an opportunity to be heard" (internal quotation marks and citations omitted)).

## V.      STAY REQUEST

Plaintiff's Stay Request seeks a stay of his deadline to submit an amended complaint based on his lack of access to his "legal papers[.]"  *See* Stay Request.

As an initial matter, plaintiff has filed several exhibits with the motion papers that have been submitted since the Stay Request was made.  Thus, it appears that the issue that formed the basis for the request has been resolved.  Furthermore, because defendants have yet to answer the complaint, the Court has yet to issue a Mandatory Pretrial Discovery and Scheduling Order, which will, among other things, set a deadline for amended pleadings.

For these reasons, the Stay Request is denied as unnecessary.

## VI.     CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that defendants' motion to revoke plaintiff's IFP status (Dkt. No. 62) and conditionally dismiss the complaint is **DENIED** as set forth above; and it is further

**ORDERED** that plaintiff's Second Preliminary Injunction Motion (Dkt. No. 23) is **DENIED** as set forth above; and it is further

**ORDERED** that plaintiff's Third Preliminary Injunction Motion (Dkt. No. 74) is **DENIED** as set forth above; and it is further

**ORDERED** that plaintiff's Stay Request (Dkt. No. 29) is **DENIED** as set forth above; and it is further

**ORDERED** that defendants shall file a response to the complaint within thirty (30) days of this Decision and Order; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on the parties.

**IT IS SO ORDERED.**

Dated:  April 24, 2024
         Albany, NY

Mae A. D'Agostino
U.S. District Judge

27