UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────

JAY BRADSHAW,

                        Plaintiff,

            v.                                    9:23-CV-0602
                                                  (MAD/ML)
ANTHONY J. ANNUCCI, et al.,

                        Defendants.

─────────────────────────────────

APPEARANCES:

JAY BRADSHAW
08-A-3654
Plaintiff, pro se
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953

HON. LETITIA JAMES                    BRIAN W. MATULA, ESQ.
New York State Attorney General       Ass't Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224


MAE A. D'AGOSTINO
United States District Judge

### DECISION AND ORDER

**I.      INTRODUCTION**

        Pro se plaintiff Jay Bradshaw commenced this action by filing a complaint asserting

claims pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with an application to proceed

in forma pauperis ("IFP"), and a request for preliminary injunctive relief.  Dkt. No. 1

("Compl."); Dkt. No. 2 ("IFP Application"); Dkt. No. 4 ("First Preliminary Injunction Motion").[1]

By Decision and Order entered on July 24, 2023, this Court granted plaintiff's IFP Application in accordance with 28 U.S.C. § 1915(g), and following review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), dismissed several claims and defendants from this action, and found that several other claims survived sua sponte review and required a response.  Dkt. No. 5 ("July 2023 Order").  The Court also denied the First Preliminary Injunction Motion without prejudice.  *Id*. at 62-64.[2]

Thereafter, plaintiff filed a second request for injunctive relief, Dkt. No. 23, and after the completion of service, counsel for the remaining defendants filed a motion to revoke plaintiff's IFP status and opposition to the Second Preliminary Injunction Motion, Dkt. No. 62 ("Motion to Revoke").[3]  Plaintiff subsequently opposed the Motion to Revoke and filed a third motion for injunctive relief.  Dkt. Nos. 72, 74.

By Decision and Order entered on April 24, 2024, this Court denied the Motion to Revoke, denied the second and third motions for injunctive relief, and directed defendants to respond to the complaint within thirty (30) days.  Dkt. No. 79 ("April 2024 Order").  Presently before the Court is plaintiff's amended complaint, which was filed after the April 2024 Order and prior to defendants' deadline to respond to the original complaint.  *See* Dkt. Nos. 83, 83-1

---

[1]  The complaint was also accompanied by an application seeking leave to commence a new civil action in this District as required by the Pre-Filing Order entered by the Honorable Glenn T. Suddaby on March 3, 2022. *See In re: Bradshaw*, No. 9:21-PF-0002 (GTS), Dkt. No. 4 ("Pre-Filing Order").  By Decision and Order entered on May 18, 2023, the Honorable Brenda K. Sannes granted plaintiff's application to commence this action.  *Id.*, Dkt. No. 10.

[2]  As of the date of the July 2023 Order, plaintiff had three other actions pending in this District.  *See Bradshaw v. Locke*, No. 19-CV-428 (N.D.N.Y. filed April 10, 2019) ("*Bradshaw v. Locke*"); *Bradshaw v. Marshal*, No. 21-CV-0826 (N.D.N.Y. filed July 21, 2021) ("*Bradshaw v. Marshal*"); *Bradshaw v. Annucci*, No. 21-CV-0901 (N.D.N.Y. filed Aug. 11, 2021) ("*Bradshaw v. Annucci I*").

[3]  Although docketed as a motion to dismiss, defendants effectively sought conditional dismissal of plaintiff's complaint unless and until he paid the filing fee for this action.

2

(collectively, "Am. Compl.").[4]

## II.      SUFFICIENCY OF THE AMENDED COMPLAINT

### A.      Relevant Legal Standard

Because plaintiff is proceeding in forma pauperis pursuant to 28 U.S.C. § 1915(g), and was an inmate suing one or more government employees at the time he commenced this action, his amended complaint must be reviewed in accordance with 28 U.S.C. § 1915(e)(2)(B), 28 U.S.C. § 1915A(b), and 28 U.S.C. § 1915(g).  The legal standard governing the review of a pleading pursuant to 28 U.S.C. § 1915(e)(2)(B), 28 U.S.C. § 1915A(b), and 28 U.S.C. § 1915(g) was discussed at length in the July 2023 Order and will not be restated in this Decision and Order.  *See* July 2023 Order at 2-10.

Insofar as plaintiff seeks to supplement his complaint, the filing of a supplemental pleading is governed by Rule 15 of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 15.  Specifically, Rule 15(d) allows a party, "[o]n motion and reasonable notice, . . . to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  Fed. R. Civ. P. 15(d).  In the case of proposed amendments where new defendants are to be added, the Court must also look to Rule 21 of the Federal Rules of Civil Procedure, which states that a party may be added to an action "at any time, on just terms."  Fed. R. Civ. P. 21.

The standard for a motion to supplement is the same as for a motion to amend the pleadings under Fed. R. Civ. P. 15(a).  *Klos v. Haskell*, 835 F. Supp. 710, 715 (W.D.N.Y. 1993) (Fisher, M.J.), *adopted by* 835 F. Supp. at 713 (W.D.N.Y. 1993) (Telesca, D.J.).

---

[4] The amended complaint is comprised of fifty-one pages, split between two docket entries, Dkt. No. 83 and Dkt. No. 83-1.  For the sake of clarity, page references herein will be continuous.  By way of example, page number 1 of Dkt. No. 83-1 will be cited as page 31 of the amended complaint.

Addition of parties under Rule 21 is also guided by the same liberal standard as a motion to amend under Rule 15. *Fair Housing Development Fund Corp. v. Burke*, 55 F.R.D. 414, 419 (E.D.N.Y. 1972).

Thus, leave to supplement should be given "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000); *see also Couloute v. Ryncarz*, No. 11-CV-5986, 2012 WL 541089, at *3 (S.D.N.Y. Feb. 17, 2012) (quoting *Monahan*, 214 F.3d at 283); *Albrecht v. Long Island R.R*, 134 F.R.D. 40, 41 (E.D.N.Y. 1991) (noting that a party may supplement to include subsequent occurrences "absent prejudice to the nonmoving party"). However, "[c]ourts regularly deny motions to amend where the moving party seeks to add claims involving collateral matters, based on different factual allegations and distinct legal theories, from the claims already at issue in a case." *Amusement Indus. v. Stern*, No. 07-CV-11586, 2014 WL 4460393, at *13 (S.D.N.Y. Sept. 10, 2014); *see also Mitchell v. Cuomo*, No. 17-CV-0892 (TJM/DJS), 2019 WL 1397195, at *3 (N.D.N.Y. Mar. 28, 2019) (adopting Magistrate Judge's recommendation to deny motion to supplement where "[t]he proposed First Amendment claims are neither related to nor pertain to the allegations in the operative pleading, thus providing a basis to deny amendment under Rule 15(d)"); *Beckett v. Inc. Vill. of Freeport*, No. 11-CV-2163, 2014 WL 1330557, at *6 (E.D.N.Y. Mar. 31, 2014) ("Supplemental pleadings are limited to subsequent events related to the claim or defense presented in the original pleading." (internal quotation marks omitted)); *see also Brooks v. Rock*, No. 11-CV-1171 (GLS/ATB), 2014 WL 1292232, at *3 (N.D.N.Y. Mar. 28, 2014) (denying motion to amend to add allegations of retaliation and failure to protect from alleged conspiracy, where the original facts occurred in 2011 and the

4

proposed new facts occurred in 2013); *Smith v. Goord*, No. 04-CV-6432, 2007 WL 496371, at *3 (W.D.N.Y. Feb. 12, 2007) (denying motion to add claims against original and new defendants based on events occurring more than one year after the original alleged events). In addition, leave to amend or supplement is properly denied "where the belated motion would unduly delay the course of proceedings by, for example, introducing new issues for discovery." *Grace v. Rosenstock*, 228 F.3d 40, 53-54 (2d Cir. 2000) (internal citation omitted); *see also Mitchell*, 2019 WL 1397195, at *3 ("Furthermore, denial of the motion to amend to add the First Amendment claims was proper because the addition of the claims would not promote the economic and speedy disposition of the controversy between the parties as framed in the operative pleading."); *Girard v. Hickey*, No. 9:15-CV-0187 (TJM/DJS), 2016 WL 915253, at *6 (N.D.N.Y. Mar. 4, 2016) ("[B]ecause this case presently includes multiple causes of action asserted against multiple defendants, the Court finds that the addition of numerous other defendants and unrelated claims arising at entirely distinct locations will necessarily prolong this action and impose additional expense on defendants. Moreover, the Court finds that adding these new claims would not aid in the efficient resolution of this action.").

The decision to grant or deny a motion to amend or supplement is committed to the sound discretion of the trial court and the court's decision is not subject to review on appeal except for abuse of discretion. *Nettis v. Levitt*, 241 F.3d 186, 192 (2d Cir. 2001); *Fielding v. Tollaksen*, 510 F.3d 175, 179 (2d Cir. 2007).[5]

---

[5] The Local Rules of Practice of the Northern District of New York require that a motion to supplement be supported by a proposed pleading. N.D.N.Y.L.R. 7.1(a)(4). A plaintiff seeking to supplement a pleading must submit a proposed pleading which is limited to "transactions or occurrences or events which have occurred since the date of the pleading that the party seeks to supplement," and which contains paragraphs numbered consecutively to the paragraphs contained in the pleading that it seeks to supplement. *Id.*

B.      **Initial Determination of Imminent Danger**

Prior to commencing this action, plaintiff had filed more than twenty other civil actions in the district courts in the Second Circuit since 2008.  *See* July 2023 Order at 3-4.  In at least four of those actions, plaintiff acquired "strikes" as defined in 28 U.S.C. § 1915(g) ("Section 1915(g)").[6]  *Id*. at 4 n.5.  Notwithstanding this determination, plaintiff's IFP Application was granted based on the Court's determination that the allegations in the complaint were sufficient to "plausibly suggest that plaintiff [was] 'under imminent danger of serious physical injury' when he signed his complaint on April 17, 2023."  *Id*. at 7 (citation omitted).

C.      **Overview of the Complaint and July 2023 Order**

Generally speaking, plaintiff's complaint alleges that at the time of filing, he had been continuously confined in the Residential Rehabilitation Unit ("RRU") at Upstate Correctional Facility for one year, and was scheduled to remain housed there for at least another year.  Compl., ¶¶ 221, 233, 248, 259-260, 303.  The complaint further alleges that plaintiff is confined in his cell for all but two hours each day, and had not received, throughout the year that he was confined in the RRU, an individual rehabilitation plan or private mental health therapy, despite a history of self-harm and ongoing anxiety and depression associated with his confinement status.  *Id*., ¶¶ 307-313, 332-340.  The complaint also identifies several incidents of plaintiff being assaulted by other inmates, alleges that he is likely to be harmed in the future if he continues to be placed in a double-bunk cell, and further alleges that he was

_____

[6]  The actions in which plaintiff acquired strikes are as follows: (1) *Bradshaw v. McQueen*, No. 08-CV-5518, Dkt. No. 32 (S.D.N.Y. Feb. 11, 2010) (dismissing complaint for failure to state a claim upon which relief may be granted); (2) *Bradshaw v. Brown*, No. 13-CV-4308, Dkt. No. 52 (E.D.N.Y. May 18, 2017) (Mandate dismissing appeal of dismissal order on grounds that it lacked "an arguable basis either in law or in fact"); (3) *Bradshaw v. The City of New York*, No. 15-CV-2166, Dkt. No. 58 (E.D.N.Y. Aug. 22, 2017) (dismissing complaint for failure to state a claim upon which relief may be granted); (4) *Bradshaw v. The City of New York*, No. 15-CV-2166, Dkt. No. 62 (E.D.N.Y. Nov. 16. 2018) (Mandate dismissing appeal on grounds that it lacked "an arguable basis either in law or in fact").

informed three days before the complaint was filed that he would be placed in a double-bunk cell "as soon as possible." *Id.*, ¶¶ 96-179.

The complaint was construed to assert the following claims for relief against the named defendants in their individual capacities: (1) First Amendment retaliation claims against defendants Osborn, Bailey, Menard, Trombley, Marshall, Keleher, North, Plonka, Gettman, Gravlin, Bishop, Mitchell, Fletcher, Veneske, Uhler, Rowe, Classification and Movement Corrections Officers John Doe #1 and John Doe #2, Sturgen, Austin Martin, Lamica, Locke, and Keating; (2) First Amendment mail tampering claims against defendants Corrections Officer John Doe #5, Lamica, Locke, Keating, Lord, John Doe #6, and Ayer; (3) First Amendment free exercise claims against defendants Bishop, Stickney, Uhler, and Annucci; (4) Eighth Amendment excessive force and failure-to-intervene claims against defendants Osborn, Corrections Sergeant John Doe #1, Phillips, Tyler, Menard, Bailey, Trombley, Cymbrak, Mitchell, Chase, Marshall, Gettman, Morrison, Corrections Sergeant John Doe #2, Corrections Officer John Doe #3, Gravlin, Robare, Carter, Corrections Officer John Doe #4, Plonka, Keleher, and Harmer; (5) Eighth Amendment failure-to-protect claims against defendants McQuinn, Waite, Bishop, Uhler, Fletcher, Osborn, Rowe, Veneske, Nichols, Holmes, Annucci, Keleher, Debyah, Gravlin, North, Harrigan, Classification and Movement Corrections Officers John Doe #1 and John Doe #2, Orbegozo, Corrections Sergeant John Doe #1, Plonka, Gettman, Carter, Sturgen, Lewis, Sharpe, Dumas, Hollenbeck, DeCosse, Gordon, and Jubert; (6) Eighth Amendment conditions-of-confinement claims against defendants Gravlin, Uhler, Bishop, Sergeant Jane Doe, Austin Martin, Marshall, Sturgen, and Veneske based on COVID-19 quarantine requirements, unhygienic conditions, inadequate heating and clothing, and inadequate sleeping accommodations; (7)

7

an Eighth Amendment conditions-of-confinement claim against defendant Annucci based on plaintiff's receipt of an inadequate diet; (8) Eighth Amendment conditions-of-confinement claims against defendants Uhler, Bishop, and Annucci based on excessive restrictive confinement in the special housing unit ("SHU") from August 1, 2021 to April 12, 2022; (9) Eighth Amendment conditions-of-confinement claims against defendants S. Martin, Uhler, Rodriguez, Terriah, Bishop, LaPlant, Stickney, and Annucci based on excessive restrictive confinement in the RRU; (10) Eighth Amendment medical indifference claims against defendants Dumas, Gravell, Jane Doe #1 and Jane Doe #2 based on deny ing plaintiff access to adequate medical and mental health treatment; (11) Fourteenth Amendment disciplinary due process claims against defendants S. Martin, Uhler, Rodriguez, Terriah, Bishop, and LaPlant; (12) Fourteenth Amendment due process claims against defendants Gravlin and Veneske based on denying plaintiff access to phone calls; (13) Fourteenth Amendment due process claims against defendants Stickney, Bishop, Uhler, Gravlin, Veneske, and Annucci based on the nature of plaintiff's confinement in the RRU; and (14) conspiracy claims against defendants Tyler, Phillips, Hooper, McGee, Robare, Gravlin, Keleher, Harmer, and Osborn.  *See* July 2023 Order at 28-30.

Following review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), the following claims survived sua sponte review: (1) plaintiff's retaliation claims against defendants Osborn, Bailey, Menard, Trombley, Marshall, Keleher, Plonka, Gettman, Gravlin, Bishop, Mitchell, Fletcher, Veneske, Rowe, Lamica, and Keating; (2) plaintiff's mail tampering claims against defendants Lamica, Locke, Keating, Lord, John Doe #6, and Ayer; (3) plaintiff's free exercise claims against defendants Bishop, Stickney, Uhler, and Annucci based on the denial of congregate services and religious meals; (4) plaintiff's excessive force

8

and failure-to-intervene claims against defendants Osborn, Corrections Sergeant John Doe #1, Phillips, Tyler, Menard, Bailey, Trombley, Cymbrak, Mitchell, Chase, Marshall, Gettman, Morrison, Corrections Sergeant John Doe #2, Corrections Officer John Doe #3, Gravlin, Robare, Carter, Corrections Officer John Doe #4, Plonka, Keleher, and Harmer (i.e., the excessive force and failure-to-intervene claims related to each of the ten assaults identified in the recitation of facts); (5) plaintiff's failure-to-protect claims against defendants McQuinn, Waite, Bishop, Uhler, Fletcher, Osborn, Rowe, Veneske, Nichols, Holmes, Annucci, Keleher, Debyah, Gravlin, North, Harrigan, Classification and Movement Corrections Officers John Doe #1 and John Doe #2, Orbegozo, Corrections Sergeant John Doe #1, Plonka, Gettman, Carter, Sturgen, Lewis, Sharpe, Dumas, Hollenbeck, DeCosse, Gordon, and Jubert (i.e., the failure-to-protect claims related to each of the nine inmate assaults identified in the recitation of facts); (6) plaintiff's conditions-of-confinement claim against defendant Gravlin based on inadequate heating in plaintiff's housing unit between September 25 and October 2, 2021; (7) plaintiff's conditions-of-confinement claim against defendants Austin Martin and Marshall based on defendant Martin removing plaintiff's mattress from his cell, with approval from defendant Marshall, from December 6 to December 11, 2021; (8) plaintiff's conditions-of-confinement claim against defendant Corrections Sergeant Jane Doe based on this official "compell[ing] plaintiff to remain outside to stand in the freezing cold weather for about five or six hours while the officers and defendant Jane Doe remained inside the facility or on the bus with other prisoners[,]"; (9) plaintiff's conditions-of-confinement claim against defendants Gravlin, Veneske, Uhler, and Bishop based on these officials denying plaintiff in-cell cleaning supplies between April and September, 2022, and December, 2022 and January, 2023; (10) plaintiff's conditions-of-confinement claims against defendants Uhler,

9

Bishop, and Annucci based on excessive restrictive confinement in the SHU from August 1, 2021 to April 12, 2022; (11) plaintiff's conditions-of-confinement claims against defendants S. Martin, Uhler, Rodriguez, Terriah, Bishop, LaPlant, Stickney, and Annucci based on excessive restrictive confinement in the RRU; (12) plaintiff's medical indifference claims against defendants Dumas, Gravell, Jane Doe #1, and Jane Doe #2; and (13) plaintiff's due process claims against defendants Stickney, Bishop, Uhler, Gravlin, Veneske, and Annucci based on the nature of his confinement in the RRU.  *See* July 2023 Order at 65-66.

### D.    Overview of the Supplemental Allegations in the Amended Complaint

In addition to reasserting the claims that survived sua sponte review (and certain previously dismissed claims), the amended complaint asserts several new claims based on alleged wrongdoing that occurred after the filing of the original complaint, while plaintiff was incarcerated at Upstate, Clinton, and Great Meadow Correctional Facilities.  *See generally*, Am. Compl.  The following new facts are set forth as alleged in the amended complaint.

### 1.  Inmate Assaults

On June 1, 2023, Corrections Lieutenant Debyah, Corrections Captain Gravlin, and Upstate Correctional Facility Superintendent Skiff approved plaintiff's placement in a double-bunk cell with Inmate Joyette, even though they were aware that this person "was not cleared for TB by medical, had an extensive history of violence against other prisoners, [and] was a Blood[.]"  Am. Compl. at 21.  Physician Assistant Lewis and Physician Assistant Lashway also "disregarded [plaintiff's] medical condition, which should have precluded [him] from double-bunking."  *Id.*

Between June 3 and June 5, 2023, Inmate Joyette "repeatedly exposed himself [to plaintiff] and grabbed [his] private parts."  Am. Compl. at 22.  Plaintiff grieved the incidents,

10

and those grievances were "forwarded to defendant Uhler for resolution." *Id.*  Plaintiff also submitted a complaint to the Office of Special Investigation ("OSI"), which was forwarded to John Doe Investigator #1.  *Id.*  Plaintiff's grievance was denied.  *Id.*

On September 28, 2023, Gravlin, Skiff, and Corrections Sergeant Bush approved plaintiff's placement in a double-bunk cell with Inmate Brown "even though aware that Inmate Brown has a history of violence against other prisoners [and] was a Blood[,]" and that plaintiff is victim prone.  Am. Compl. at 22.  When plaintiff was placed in the cell with Inmate Brown, Corrections Officer Bronson was told that Inmate Brown did not want to share a cell with plaintiff and intended to assault him if forced to do so.  *Id.*  Bronson ignored the warning and thereafter witnessed Inmate Brown attack plaintiff, then walked away.  *Id.*  Shortly thereafter, Bronson returned to the cell and observed Inmate Brown attacking plaintiff "for about five (5) minutes before reporting it."  *Id.*  Sergeant Bush denied plaintiff's request for protective custody.  *Id.* at 23.

As a result of Superintendent Skiff's failure to perform a reassessment following this incident, plaintiff was relocated to a cell with Inmate Mojena, who also has a history of violence against other prisoners and was a Blood gang member.  Am. Compl. at 23.  Bush and Gravlin were aware of Inmate Mojena's history and plaintiff's history yet allowed this cell placement.  *Id.*  The next day, Inmate Mojena "directed [plaintiff] to tell [Corrections Officer] Paige to move [plaintiff] from the cell or he will attack [plaintiff.]"  *Id.*  Paige ignored this threat and walked away, "which prompted Mojena to attack [plaintiff.]"  *Id.*  Plaintiff reported the attack to another officer and was removed from the cell.  *Id.*

Following this incident, Sergeant Bush "rejected [plaintiff's] request for protective custody" and, along with Gravlin and Skiff, recommended that plaintiff be housed in a double

11

cell with Inmate Kelly.  Am. Compl. at 23.  However, these officials were aware that Inmate

Kelly "has a history of violence against other prisoners" and "was a Blood[,]" and that plaintiff

is victim prone.  *Id.*  On October 3, 2023, Inmate Kelly made physical contact with plaintiff in a

sexual manner, and "then attacked [plaintiff] because [he] resist[ed] [these] advances."  *Id.*

Plaintiff "informed" Corrections Officer John Doe #7 about the incident when this official

collected breakfast trays, and requested medical attention, but this official "stood there

unresponsive[.]"  *Id.*  Inmate Kelly then "attack[ed]" plaintiff again, after which time plaintiff

was "taken out [of] the cell and seen by medical."  *Id.*

After plaintiff was evaluated by medical, he was placed in a cell with Inmate Ashe, at

the recommendation of Gravlin and Corrections Sergeant Gaurin, and with approval from

Superintendent Skiff.  Am. Compl. at 23.  These officials were all aware that this inmate has a

history of violence and was "a CRIP," and that plaintiff is victim prone.  *Id.*

Once plaintiff entered the cell, Inmate Ashe threatened to stab him.  Am. Compl. at 23-

24.  Plaintiff relayed this threat to Corrections Officer Mayer, and this official ignored him and

walked away.  *Id.* at 24.  Inmate Ashe then "cut and stab[bed]" plaintiff "multiple times with a

metal object[,] . . . causing [him] serious physical injury."  *Id.*

Following the incident, Nurse Jane Doe #1 failed to treat plaintiff's injuries, which

caused them to worsen and plaintiff's leg to swell and become infected.  Am. Compl. at 24.

Thereafter, plaintiff was placed in a cell with Inmate Jackson, a Blood gang member,

who threatened to attack plaintiff.  Am. Compl. at 24.  Plaintiff informed Corrections Officer

Brown about this threat, and Brown "mocked" plaintiff and walked away.  *Id.*  Plaintiff also

informed Corrections Officer Miller about the threat, and this official ignored him.  *Id.*

Thereafter, Inmate Jackson "attack[ed]" plaintiff.  *Id.*

Sergeant Gaurin rejected plaintiff's request for protective custody.  Am. Compl. at 24.
Plaintiff submitted grievances regarding the inmate assaults, which were forwarded to Uhler,
and complaints to OSI, which were forwarded to OSI Investigator #8 for remedial action.  The
grievances were denied, and plaintiff "continued to be placed in double-bunk cells[,] where
[he] was assaulted by other prisoners[.]"  *Id.*

On November 10, 2023, plaintiff was attacked in his cell by Inmate Paul, who had a
history of violence.  Am. Compl. at 25.

On March 22, 2024, plaintiff was relocated from a single cell to a double cell with
Inmate Rice, who was a Blood gang member with a known history of violence.  Am. Compl.
at 26.  On March 31, 2024, Inmate Rice informed plaintiff that unidentified corrections officers
"directed him to attack [plaintiff.]"  *Id.*  On April 14, 2024, Inmate Rice was removed from the
cell "so that another prisoner could attack [plaintiff]."  *Id.*

### 2.  Discipline

#### a.  May 2023 Misbehavior Report

On May 12, 2023, while plaintiff was incarcerated at Clinton Correctional Facility, he
"was placed in the SHU for the charges [of] lewd conduct and direct order," for which he
received a misbehavior report on May 13, 2023.  Am. Compl. at 28.  On May 17, 2023,
Hearing Officer Durrin denied plaintiff's request to be released from the SHU and adjourned
the hearing to afford plaintiff time to obtain an employee assistant.  *Id.*  Plaintiff was
subsequently excluded from his hearing, found guilty of the charges in the misbehavior
report, and sentenced to 60 days of SHU confinement and loss of certain privileges.  *Id.*  On
June 21, 2023, the hearing decision was reversed and dismissed.  *Id.*

#### b.  September 2023 Misbehavior Report

13

On September 14, 2023, while plaintiff was incarcerated at Great Meadow Correctional Facility, Corrections Officer Londrigan issued him a misbehavior report charging him various rules violations, including violent conduct, possession of a weapon, possession of contraband, possession of an altered item, and assault on staff.  Am. Compl. at 29.  The misbehavior report alleged that plaintiff was found to have a state-issued razor with the blade exposed and tape on the handle during a search of his cell, and that plaintiff kicked Londrigan while this official attempted to recover the item.  *Id.*

On September 18, 2023, plaintiff's disciplinary hearing began before Corrections Lieutenant Persutti, who adjourned the hearing so that plaintiff could obtain an employee assistant.  Am. Compl. at 29.  On September 21, 2023, plaintiff met with his assigned assistant, who requested certain documents and witnesses, along with video of the outside of plaintiff's cell following the incident.  *Id.*

On September 22, 2023, Persutti resumed the hearing and denied plaintiff's request for a Use of Force report as duplicative of the summary of the report, and denied a witness involved in the use-of-force incident as irrelevant.  Am. Compl. at 29.  Thereafter, Corrections Sergeant Lehoiski testified that plaintiff's cell was searched based on confidential information, and Londrigan's report was read into the record.  *Id.*

Plaintiff was found guilty of the charges in the misbehavior report and sentenced to 365 days of SHU confinement and loss of property.  Am. Compl. at 30.  Great Meadow Correctional Facility Superintendent Collins affirmed the hearing decision, and SHU Director Rodriguez thereafter dismissed one charged, but otherwise affirmed the decision on appeal. *Id.*  Plaintiff served fifteen consecutive days in the SHU, and he was then placed in the RRU until December 11, 2023, when he was returned to the SHU for ten days.  *Id.* at 31.  Plaintiff

14

subsequently spent time between the RRU and SHU until February 8, 2024.  *Id.*  Plaintiff has been confined in the RRU since that date.  *Id.*

### 3. Confinement Conditions

Between May 12 and June 1, 2023, plaintiff was confined in the SHU at Clinton Correctional Facility, and he was thereafter transferred to the RRU at Upstate Correctional Facility, where he remained until June 29, 2023.  Am. Compl. at 45.  While in the RRU, plaintiff was allowed out of his cell for two hours each day, during which time he was only allowed to participate in congregate programming.  *Id.*  Plaintiff was denied recreation and was not provided with a rehabilitation plan upon entering the RRU.  *Id.*  Plaintiff did not receive a change of clothing and underwear between May 12 and June 14, 2023, and did not receive weekly phone calls between June 1 and June 29, 2023.  *Id.* at 46.

Between September 28, 2023 and May 17, 2024, i.e., the filing date of the amended complaint, plaintiff has been denied recreation, a regular change of clothing, television and tablet privileges, daily showers, full access to commissary and package services, and an adequate diet, and has been limited to two hours of out-of-cell congregate programming while confined in the RRU.  Am. Compl. at 47.  Plaintiff has not received a rehabilitation plan that may allow him to obtain early release from the RRU, or periodic reviews.  *Id.*  Gravell, Dumas, and Jane Doe #1-3 have also deprived plaintiff of "psycho-therapy and private interviews to discuss mental health issues[.]"  *Id.* at 48.

In addition to missing certain meals, plaintiff has been offered a Cold Alternative Diet since March, 2019, which is a meal plan that is meatless, and lacking in necessary protein, vitamins, and minerals.  Am. Compl. at 49.

### E. Analysis

### 1. Proposed Supplemental Allegations

As noted, plaintiff is proceeding IFP based on the Court's prior determination that the allegations in the complaint were sufficient to plausibly suggest that he faced an imminent danger of serious physical injury in April, 2023, at the time of filing. *See* July 2023 Order at 5-7. The proposed supplemental allegations, which span the following calendar year, are based on alleged wrongdoing at three different correctional facilities.

This Court previously advised plaintiff, in another one of his pending cases where he sought to supplement his pleading with new allegations that did not relate to ongoing imminent danger, that "allowing [him] to proceed with his proposed supplemental claims would run afoul of the limitations set forth in 28 U.S.C. § 1915(g), and amount to an abuse of [his] IFP privilege[,]" whereas denying the supplemental claims "would not result in any legal prejudice to plaintiff because these claims could be raised in a separate action." *See Bradshaw v. Marshal*, Dkt. No. 82, at 14-16.[7] The Court further explained that "allowing plaintiff to proceed with claims based on events that bear no relation to the imminent danger allegations and occurred after the filing date of the complaint would (1) expand the scope of discovery and potential motion practice, and (2) present the potential for jury confusion." *Id.* (citing *Darowski v. Wojewoda*, No. 15-CV-0803, 2018 WL 2122822, at *2-3 (D. Conn. May 8, 2018) (denying the plaintiff's motion for leave to file an amended complaint based on, inter alia, the risk of confusion of issues given the unrelated nature of the original and newly

---

[7] The law is well-settled in this Circuit that a "three strikes" litigant such as plaintiff may raise claims of past harm when his complaint satisfies the "imminent danger" requirement. *See Chavis v. Chappius*, 618 F.3d 162, 171 (2d Cir. 2010) (holding that when a "three strikes" plaintiff adequately alleges imminent danger on some claims, the action may proceed on any other claims contained in the same complaint, even though they may lack a nexus to imminent danger). With good reason, however, the Second Circuit has never held that a "three strikes" litigant may expand the scope of an action to include supplemental claims that do not satisfy the "imminent danger" requirement or relate to the wrongdoing alleged in the original complaint, as allowing this to occur would in essence render the statutory exception to the "three strikes" rule meaningless.

proposed claims, and the fact that the plaintiff was free to commence a new action based on the new claims)).

In this case, the amended complaint does not allege any facts which plausibly suggest that plaintiff faced an imminent danger of serious physical injury at the time the amended complaint was filed.  Indeed, the only allegations of wrongdoing near the time of filing relate to plaintiff's lack of desired mental health care, denial of access to recreation and a regular change of clothing, and placement in a double-bunk cell.  However, plaintiff's vague allegations related to his lack of desired mental health treatment indicate, at most, a dissatisfaction with the type of mental health treatment being offered.[8]  Moreover, the amended complaint is devoid of allegations which plausibly suggest that plaintiff faced a serious risk of physical harm based on being deprived outdoor recreation and a regular

---

[8]  In the original complaint, plaintiff alleges that between April 2022 and April 2023, he was on a "call-out" list to receive a private mental health interview, and defendants Dumas, Gravell, and Mental Health Professionals Jane Doe #1 and Jane Doe #2 refused to speak with him during rounds or place his name on call-outs for private interviews between October 1, 2022 and April 12, 2023.  Compl., ¶¶ 307-308.  Plaintiff further alleges that on April 3, 2023, he advised Jane Doe #2 that he was suffering from anxiety and depression, and spoke with Jane Doe #1 regarding his desire for a private mental health interview on April 4, 2023, yet no private interview was scheduled, and after he filed a grievance on the matter, defendants Dumas and Jane Doe #1 refused to speak with him.  Compl., ¶¶ 310-313.  The amended complaint does not allege that plaintiff's requests for mental health treatment remained unacknowledged through the filing date of the amended complaint.  Nor does the pleading include allegations which plausibly suggest that plaintiff communicated mental health concerns around the time of filing, which have been ignored.  Rather, the pleading only generically alleges that Gravell, Dumas, and Jane Doe #1-3 have, on unidentified occasions, deprived plaintiff of "psycho-therapy and private interviews" to discuss "mental health issues[.]"  Am. Compl. at 48.  Such vague allegations are insufficient to plausibly suggest that plaintiff faced an imminent danger of serious physical injury at the time of filing.  *See, e.g., Evans v. Atearn*, No. 23-CV-373, 2023 WL 3267764, at *4 (W.D. Mich. May 5, 2023) (noting that "vague" allegations that "mental health staff and [the] SCC refuse to hold a treatment team meeting and refer [the inmate plaintiff] to [a residential treatment program] and release him to [general population]" are "insufficient to show imminent danger"); *Pointer v. Morh*, No. 18-CV-653, 2018 WL 4999836, at *2 (S.D. Ohio Oct. 16, 2018) ("As the magistrate judge noted, this is not a case involving a complete lack of medical care. Plaintiff's complaint alleged the failure to provide PTSD 'programming.' Beyond this conclusory statement, plaintiff did not allege how the treatment he received at the Madison Correctional Institution was inadequate to protect him from any imminent danger created by whatever suicidal tendencies he has."); *White v. Colorado*, 157 F.3d 1226, 1232 (10th Cir. 1998) (finding that vague and conclusory assertions regarding withheld medical treatment were insufficient to satisfy the imminent danger standard); *cf. Lindsey v. Hoem*, 799 Fed. App'x 410, 412 (7th Cir. 2020) (finding that allegations that prison staff failed to offer *any* treatment for mentally ill prisoner's PTSD were sufficient to satisfy the imminent-danger exception (emphasis added)).

change of clothing.  *See Pettus v. Steves*, No. 9:08-CV-0675 (LEK/GHL), 2009 WL 2156905,

at *1 (N.D.N.Y. July 15, 2009) (finding no imminent danger from false misbehavior report,

resulting in confinement in the Special Housing Unit where the plaintiff allegedly endured

"torture, torment, starvation, humiliation, denial of medication, no rec, no showers, exposure

to sewage, excessive noise, defective plumbing, shield placement, exposure to severely

mentally ill prisoners, [and] deprivation of basic sanitation[.]"); *Chavis*, 618 F.3d at 165

(stating that for the purposes of evaluating whether imminent danger exists, "the only relevant

allegations are those in which [the plaintiff] describes physical injury, threats of violence, and

deprivation of medical treatment"); *Carter v. Shepperson*, No. 19-CV-163, 2020 WL 6746789,

at *4 n.5 (E.D.N.Y. Nov. 16, 2020) (stating that in light of the Second Circuit's ruling in *Chavis*,

"Plaintiff's complaints that he was denied a fulsome breakfast and showers for up to four

days, denied recreation time, and denied access to the phone will not be considered in

determining whether imminent danger exists").  In addition, plaintiff's allegation that he fears

future harm if he is forced to share a cell with another inmate is entirely speculative.  *See*

*Burgess v. Conway*, 631 F. Supp. 2d 280, 283 (W.D.N.Y. 2009) ("To fall within the exception,

... the danger must be specific in nature, and amount to more than just fear that a physical

attack could occur at some point in the future." (italics omitted) (citing *Brown v. Johnson*, 387

F.3d 1344, 1349-1350 (11th Cir. 2004) (requiring the plaintiff to present "specific fact

allegations ... of a pattern of misconduct evidencing the likelihood of imminent serious

physical injury")); *Avent v. Fischer*, No. 07-CV-1135, 2008 WL 5000041, at *6 (N.D.N.Y. Nov.

20, 2008) ("[U]nless the prospect of ... a future assault is so specific and/or likely as to be

deemed real, such an allegation will not suffice to allege an imminent danger on the date of

the filing. This point of law is consistent with the rather well-established rule that the imminent

Case 9:23-cv-00602-MAD-ML   Document 89   Filed 07/24/24   Page 19 of 22


danger claimed by the inmate must be real, and not merely speculative or hypothetical.")
(quotation marks and citations omitted); *Threatt v. Davenport*, No. 13-CV-421, 2013 WL
1831803, at *3 (W.D. Mich. Apr. 30, 2013) ("Plaintiff's claim that he is in imminent danger as
a result of being incarcerated with violent offenders and gang bangers is far too speculative
to establish that he is in real and proximate danger of serious physical injury.").[9]

      Furthermore, while there is a relationship, generically speaking, between plaintiff's
pending Eighth Amendment claims related to double celling and his proposed new claims,
that relationship is not so close that plaintiff would somehow be prejudiced by having to purse
those claims (or any of his other proposed supplemental claims) in a new action.[10]  For
example, the inmates who allegedly "attacked" plaintiff after the filing date of the original
complaint are all different from the inmates who allegedly "attacked" him before the filing date
of the original complaint.  *Compare* Compl., ¶¶ 95-180, *with* Am. Compl., ¶¶ 168-194.
Similarly, the named defendants in the original complaint who allegedly ignored specific
threats of harm communicated to them by plaintiff are different from the proposed new

---

    [9]  The amended complaint does not allege that plaintiff was housed with another inmate at the time of
filing, let alone an inmate who was likely to harm him physically.  Furthermore, the pleading is devoid of
allegations which plausibly suggest that housing plaintiff with *any* inmate will subject him to a serious risk of
physical harm.  The Court would add only that it would have serious concerns with the veracity of any such
allegation in light of the following: (1) plaintiff sued several officials from Upstate Correctional Facility in
*Bradshaw v. Locke* based on allegations that these officials failed to protect him from a serious risk of harm by
placing him in a cell with gang members between June 28, 2018 and March 14, 2019, despite knowing that
plaintiff was vulnerable to an attack by gang members based on having been labeled a "snitch[,]" *see Bradshaw
v. Locke*, Dkt. No. 171 at 6-14, and a jury returned a verdict in favor of the defendants in that case on all of
plaintiff's claims, including these Eighth Amendment claims, *id.*, Dkt. No. 232; (2) plaintiff introduced evidence in
*Bradshaw v Locke* that on two separate occasions he was housed at Upstate Correctional Facility with inmates
who did not present a risk of harm to him, *see Bradshaw v Locke*, Dkt. No. 148 at 15, ¶¶ 11-16; Dkt. No. 140-10
at 22-23, 74-77; Dkt. No. 126, ¶¶ 28-30; and (3) plaintiff does not allege in this action that he was harmed by
Inmate Rice, with whom he was housed for roughly three weeks between March and April, 2024.

    [10]  In addition to plaintiff's alleged ongoing concern regarding double-celling, the original and amended
complaints both assert claims based on the conditions of his restrictive confinement.  However, the deprivations
about which plaintiff complains in each pleading are different in certain respects, as are the reasons for plaintiff's
restrictive confinement before and after the filing of the original complaint.  There is also no clear relationship
between any of plaintiff's other proposed new claims and his pending claims.

defendants in the amended complaint who allegedly ignored new threats of harm made after the filing date of the original complaint.  *Id*.[11]

Finally, there are currently fifty-five (55) named defendants in this case and seven "Doe" defendants. The amended complaint names one hundred and three (103) individuals as defendants, plus thirty-nine (39) "Doe" defendants.  *See* Am. Compl.  It would be unduly burdensome, to say the least, for the Court to expand a case that already covers numerous separate incidents of wrongdoing involving sixty-two (62) defendants, over a span of more than two years, to include multiple new events across another one-year period, and seventy (70) new defendants.  *See Grace*, 228 F.3d at 53-54; *Mitchell*, 2019 WL 1397195, at *3; *Girard*, 2016 WL 915253, at *6.  Plaintiff's abusive litigation history, including his propensity for burdensome and frivolous filings, would only compound this management problem.[12]

For these reasons, the Court declines to accept the amended complaint for filing insofar as it includes supplemental allegations of wrongdoing.  Should he wish to do so, plaintiff may pursue his proposed supplemental claims in a separate action, pursuant to the requirements set forth in the Pre-Filing Order (and his ability to pay the required filing fee or satisfy the imminent danger standard).

## 2.  Other Proposed Amendments

---

[11]  With one exception, plaintiff's allegations related to the five "attacks" he suffered from other inmates between September and November 2023 also lack any specifics (such as the manner and duration of the attack, how it started, or injuries that he suffered).

[12]  In the April 2024 Order, the Court discussed plaintiff's "habit of vexatious and unduly burdensome filings" and expressly ruled that if he "files another unsubstantiated motion for injunctive relief that is denied for one or more reasons previously addressed by this Court, defendants may request costs and expenses associated with opposing the motion, and renew their current request for a filing restriction."  *See* April 2024 Order at 25-26.  Plaintiff's abusive filing history was also addressed in two of his other actions wherein his IFP status was revoked following evidentiary hearings.  *See Bradshaw v. Gordon*, No. 21-CV-0645, Dkt. No. 67 (N.D.N.Y. filed Feb. 18, 2022); *Bradshaw v. Uhler*, No. 21-CV-0776, Dkt. No. 72 (N.D.N.Y. filed Feb. 18, 2022).

Insofar as plaintiff seeks to amend his complaint to include new allegations and claims based on events that occurred before the filing date of the complaint (or new allegations in support of claims that were previously dismissed), the Court declines to consider those allegations at this time because doing so would be a waste of judicial resources. As noted above, pursuant to the July 2023 Order, there are currently seven "Doe" defendants in this case. The amended complaint does not identify any of these "Doe" officials by name, and in fact alleges that additional "Doe" officials were involved in certain of the events that are the subject of plaintiff's pending claims. *See* Am. Compl., ¶¶ 32, 62, 69, 76, 135-36, 139, 143-44, 287. Furthermore, the parties have yet to engage in discovery in this case, and counsel has advised the Court that he may file a motion to dismiss the complaint. *See* Dkt. No. 80.

The Court will not waste precious judicial resources addressing allegations that will be presented again (with perhaps additional allegations) in response to a motion to dismiss and/or once plaintiff is able to properly identify the "Doe" defendants. Instead, the Court will allow plaintiff to present a complete amended complaint -- limited to events referenced in the current amended complaint that occurred before the filing of the original complaint -- in response to any motion to dismiss filed by the defendants, or, if no such motion is filed, once plaintiff is able to properly identify the "Doe" defendants. The Court will not consider piecemeal pleadings that identify only certain "Doe" defendants.

## IV.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the amended complaint (Dkt. No. 83) is **DISMISSED** in its entirety without prejudice as set forth above; and it is further

**ORDERED** that the original complaint remains the operative pleading in this case**;** and

21

it is further

**ORDERED** that the current defendants file a response to the complaint within thirty

(30) days of this Decision and Order; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on the parties.

**IT IS SO ORDERED.**

Dated:  July 24, 2024
         Albany, NY

Mae A. D'Agostino
U.S. District Judge

22